CHARLES P. WHITTEMORE, and another,
*vs.*
EDWARD N. MERRILL.

Somerset.    Opinion April 18, 1895.

*Nonsuit.    Practice.    Evidence.    Variance.*

It is settled law in this State, that the court may order a nonsuit when the plaintiff's evidence is insufficient to authorize or justify a verdict in his favor.

If a joint contract with two plaintiffs in one and the same action is alleged, *held:* that proof of a several contract with each plaintiff will not support the action.

ON EXCEPTIONS.

This was an action of assumpsit based on an alleged contract as set forth in the following declaration. The plea was the general issue.

After the plaintiffs had put in their evidence and rested their case, the presiding justice ruled that the evidence tended to show a separate contract with each plaintiff, and did not tend to show a single contract with both plaintiffs as alleged in the declaration, and thereupon directed an entry of nonsuit.

To this ruling and direction the plaintiffs excepted.

(Declaration.) "In a plea of the case; for that the said Merrill, on the 26th day of March, A. D., 1885, at Skowhegan aforesaid, in consideration that the said plaintiffs would become bound as sureties, with one Ellsworth Dunlap as principal, to one Lucy A. Corson, by a bond, in the penal sum of five hundred dollars, conditioned that the said Ellsworth Dunlap should appear at the September term, A. D., 1885, of the Supreme Judicial Court for the county of Somerset and should abide the order of the court thereon, promised the plaintiffs that he would have the said Dunlap to appear at the said court, at the said time before the forfeiture of said bond and before the plaintiffs should become liable on the same, and that he the said defendant would save them, the said plaintiffs, harmless from all demands, suits and

troubles that might happen to them by means of their being so bound as aforesaid ; and the plaintiffs in truth say, that, giving credit to the said defendant's promises as aforesaid, they did then and there, at the request of the said defendant, become bound, with the said Ellsworth Dunlap, to the said Lucy A. Corson by such a bond as aforesaid, conditioned as aforesaid. Yet the said defendant, not minding his promise aforesaid, did not have the said Dunlap to appear at the said September term of the Supreme Judicial Court, for the county of Somerset, in season to save the forfeiture of said bond, nor save the plaintiffs harmless concerning the premises ; but the said plaintiffs at the December term, A. D., 1886, of the Supreme Judicial Court within and for the county of Somerset, were sued upon the bond aforesaid, by the said Lucy A. Corson, by her next friend, and the said Lucy A. Corson recovered judgment against the plaintiffs upon the said bond for the penal sum of the bond, viz : five hundred dollars, and one hundred and forty dollars and thirty-nine cents, costs of the suits, and the plaintiffs have been compelled to pay not only those sums but divers other sums of money, and have been put to great trouble and expense by means of the suit aforesaid. Yet the defendant, although often requested," etc.

It appeared that on March 25, 1885, one Dunlap was arrested on a bastardy process and taken to Merrill & Coffin's office, in Skowhegan, and in default of bail was committed to jail on the same day ; that on the next day, March 26th, one of the plaintiffs, Charles P. Whittemore, and one Eleazer Clark signed as sureties a bastardy bond for Dunlap's release from jail ; that this bond, signed by Charles P. Whittemore and Clark was rejected by Mr. Baker, the jailer ; that later on the same day, a second bond was made, signed by the plaintiffs, Charles P. Whittemore and John P. Whittemore, as sureties, and then taken to the jail to Dunlap and there signed by him as principal and then given to Mr. Baker, the jailer, who thereupon released said Dunlap from custody ; that the plaintiffs subsequently were obliged to pay and did pay the penal sum of said second bond

so signed by them; and in this action sought to recover the sum so paid, of the defendant, upon an alleged joint oral promise, which they in their declaration alleged that he made to them, that he would save them harmless from liability by reason of their signing said second bond.

The material testimony of the plaintiff, Charles P. Whittemore, is as follows: On going to Mr. Merrill's office with Clark, the defendant said, "Dunlap had sent down word for him to come up, but he thought there was no need of it. He wanted him to give bonds, and asked if we would sign bonds for him. We told him we didn't know anything about bonds and didn't care to sign them and get drawn into any trouble. He said the bond was nothing but a common bond, and all the risk there was, was the prisoner running away. Mr. Merrill said that. About that time Mr. Baker [the jailer] came in and said the bond wasn't a common bond and there was risk; and Mr. Merrill said the bond was nothing but a common bond, and if we would sign the bond he would guarantee to protect us from all harm if the prisoner appeared at the trial and didn't run away. I told him we didn't consider there was any risk of his running away, and we offered to sign the bond." . . .

"Q. Whether or not Mr. Merrill said anything to you about getting your brother, John P. Whittemore, to sign the bond? A. Yes; he said they had objected to Clark's signature on the bond and wanted to know if I couldn't get my brother. I told him I didn't think he would care to sign a bond. Mr. Merrill says: 'You tell your brother that all the risk there is, is the prisoner running away, and if he appears at the trial I will guarantee to protect him from all harm; if he will sign the bond, he will never have a cent to pay.' Merrill said they was common bonds, and all the risk was of the prisoner running away; and if we would sign the bond he would guarantee to protect us from all harm if the prisoner would appear at the trial; and we told him we wasn't afraid of his running away.

"Q. That was stated in the presence of Mr. Baker? A. Yes.

"Q. After Mr. Merrill made this statement, as you say,

what was next said? A. The bonds were made out, and we waited until they were made out and signed them.

"Q. When you went in there on your second errand what was said to you? A. Mr. Merrill said the bonds had been returned.

"Q. What did he say? A. He said Baker would not accept the bonds on Clark's signature.

"Q. What else was said? A. He wanted to know if I couldn't take the bond down and get my brother to sign it. I told him I didn't know as he would care to sign it. He says: 'You take it down to him; all the risk there is, is the prisoner running away, and if he appears at the trial I will protect him, he never shall have a cent to pay.'

"Q. What did you say? A. I told him I would take the bond down, and I signed it and took it down to him.

"Q. Was that the first intimation made to you in any way from anybody that your brother John's signature was wanted on that bond? A. That is the way I understand it.

"Q. It came to you from Mr. Merrill as a direct proposition that John should sign that bond? A. That is where I got it, yes, sir.

"Q. The proposition that that first bond should be withdrawn and a second bond signed by you and John was broached to you then for the first time by Mr. Merrill in his office? A. That is the way I understand it.

"Q. You said that you thought that that would be satisfactory to John, did you? A. I said I didn't know as he would care to sign it.

"Q. You were willing to sign it and take it to him with the message to see if he would sign it? A. Yes, sir.

"Q. Who drew that second bond? A. I think Mr. Coffin drew it. . . .

"Q. Now, as matter of fact, don't you know that Mr. Coffin wrote that second bond in your presence? A. He might have wrote it there. . . .

"Q. Didn't you see him write his name and witness your signature? A. I did." . . .

Eleazer Clark testified : " Mr. Merrill asked Mr. Whittemore and myself about giving a bond for the release of Ellsworth Dunlap. After talking it over for a few minutes he said it was nothing whatever but a common bond, and if we would sign the bond, and the prisoner did not run away, and was delivered up to the court he would protect us from all harm,— that is all."

John P. Whittemore testified : " The first I knew anything about it my brother, Charles, asked me if I would sign them."

" Q. What did Charles says ? A. He said Merrill wished him to take them out and see if I wouldn't sign them, and all the danger in signing them was the prisoner running away ; if he would appear at court he would indemnify us from all trouble and harm."

*Forrest Goodwin*, for plaintiffs.

Counsel argued that the contract was joint because the language used shows an intention to create a joint contract; because the interests of the plaintiffs were joint; and there was sufficient evidence to go to the jury. *Union Slate Co.* v. *Tilton,* 69 Maine, 245, *Page* v. *Parker*, 43 N. H. 263 ; *Fickett* v. *Swift*, 41 Maine, 65 ; *Wilkinson* v. *Scott*, 17 Mass. 249 ; *Wentworth* v. *Leonard*, 4 Cush. 414 ; *Priest* v. *Wheeler*, 101 Mass. 479. Parties : *Holyoke* v. *Loud*, 69 Maine, 59 ; *Hill* v. *Tucker*, 1 Taunt. 7 ; 1 Chit. Pl. 8, 9 ; *Capen* v. *Barrows*, 1 Gray, 376 ; Bullen, Pl. 3d, ed. pp. 471, 472.

As no new promise was made to Charles P. or John P. Whittemore, on the occasion of signing the second bond, but by an agreement all around, as it were, John P. Whittemore simply took Eleazer Clark's place as co-promisee. If the promise of the defendant on the first bond was joint, the promise on the second bond was also joint. *Skinner* v. *King*, 4 Allen, 498.

*H. M. Heath, E. N. Merrill and G. W. Gower*, for defendant.

Nonsuit : *Perley* v. *Little*, 3 Maine, 97 ; *Smith* v. *Frye*, 14 Maine, 457 ; *Cole* v. *Bodfish*, 17 Maine, 310 ; *Head* v. *Sleeper*, 20 Maine, 314 ; *Beaulieu* v. *Portland Co.* 48 Maine, 291 ; *White* v. *Bradley*, 66 Maine, 254 ; *Heath* v. *Jaquith*, 68 Maine, 433 ; *Doremus* v. *Selden*, 19 Johns. 213 ; Dicey Parties, p. 104 ; *Holyoke* v. *Loud*, 69 Maine, 59. · Parties : Dicey Parties, Tru-

man's notes, p, 113 ; c. 4, rule 10. Evidence tending to show defendant's liability relates solely to the first bond and did not refer to the second bond,—then not contemplated. Declaration alleges promise on occasion of giving the second bond. Plaintiffs' testimony does not state that second bond was signed at defendant's request. There is no intimation of promise to Charles for the second bond, his statement shows an express promise restricted to John alone.

There is no evidence that there was payment from a joint fund ; and where several sureties pay the debt of their principal, and there is no evidence of a partnership, or joint interest, or of payment from a joint fund, the presumption of law is that each paid his proportion of the same, and a joint action cannot be maintained. *Moody* v. *Sewall*, 14 Maine, 297 ; *Bunker* v. *Tufts*, 55 Maine, 180 ; *Doremus* v. *Selden*, 19 Johns. 213.

Plaintiffs' testimony shows nothing but assurances, and discloses no actionable promises.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WHITEHOUSE, STROUT, JJ.

WALTON, J. If, in the trial of an action, the plaintiff's evidence is insufficient to authorize or justify a verdict in his favor, the court may properly order a nonsuit. Such is the settled law in this state. And it is a rule of law too well-settled and too often acted upon to require the citation of authorities in support of it.

Another fundamental rule of law is that, in an action upon a contract, if any part of the contract proved varies materially from that stated in the plaintiff's declaration, it will be fatal ; for a contract is an entire thing, and must be proved as it is alleged. If a joint contract with two plaintiffs is alleged, proof of a several contract with each plaintiff will not support the action, and the plaintiff may be nonsuited. 1 Green. Ev. § 66, and 2 Green. Ev. § 110.

At the trial of this action in the court below, after the plaintiffs had put in their evidence and rested their case, the presid-

ing justice ruled that the evidence tended to show a separate contract with each plaintiff, and did not tend to show a single contract with both plaintiffs, as alleged in the declaration, and thereupon directed a nonsuit.

We have carefully examined the evidence, and we think the ruling was correct, and the nonsuit properly ordered.

*Exceptions overruled.*